# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**DAVID ABDOO,**                                              CASE NO. 3:19 CV 400

      Plaintiff,

      v.                                                         JUDGE JAMES R. KNEPP II

**SANDUSKY COUNTY SHERIFF, et al.,**

      Defendants.                                        **MEMORANDUM OPINION AND ORDER**


## INTRODUCTION

Currently pending before this Court are two motions for summary judgment: one from Defendant-Deputy Matthew Ray and the Sandusky County Sheriff (Doc. 36), and another from Defendants City of Clyde, and Officers J.J Earhart and Mark Roach (Doc. 37). Plaintiff David Abdoo opposed both motions in one omnibus brief (Doc. 44), and each group of Defendants filed reply briefs (Docs. 47, 49). For the following reasons, the Court denies summary judgment for the individual officer Defendants on Count One of Abdoo's Complaint, and grants summary judgment for the municipal Defendants on Count Two and for the individual Defendants on Counts Three and Four of Abdoo's Complaint.

## BACKGROUND

In February 2018, Abdoo left the Red Arrow Saloon and walked about 175 yards to his friend Amber Wesney's apartment. (Abdoo Dep., Doc. 31, at 37-38).[1] He did not pay for his drinks prior to leaving. *Id.* at 36. Ray responded to a call from a Red Arrow bartender, where he was met

---

1. All deposition page citations reference the internal deposition page numbers, rather than the ECF page numbers.

by Earhart and Roach. (Doc. 34-2, at 1). They heard Abdoo had left after being disrespectful in the bar and went to Wesney's apartment. *Id.* Wesney's apartment is on the second floor, accessible by exterior stairs to a wooden deck. (Wesney Dep., Doc. 33, at 37). On the deck, Ray, Earhart, and Roach[2] confronted Abdoo. (Abdoo Dep., Doc. 31, at 43-44). Abdoo was barefoot, according to Ray. (Ray Dep., Doc. 34-2, at 2). As he bent over to try to pick up a pair of boots, Ray noticed how unsteady Abdoo was; Abdoo also smelled strongly of alcohol. *Id.* Abdoo admits he was drunk, obnoxious, and disrespectful that night. (Abdoo Dep., Doc. 31, at 34).

Abdoo then sat on one of the chairs on the deck to put on the boots, but Ray ordered him to stand, which Abdoo did. (Ray Dep., Doc. 34, at 59-60). Ray looked at the outside of Abdoo's pockets and saw nothing that suggested Abdoo was armed. *Id.* at 58. Ray then questioned Abdoo, but Abdoo refused to answer the questions. (Wesney Dep., Doc. 33, at 50-51).

After Abdoo's refusal to answer, Ray told him he was under arrest for theft. *Id.* at 55. Abdoo placed his hands behind his back, and Ray handcuffed him; Abdoo did not physically resist. (Ray Dep., Doc. 34, at 61). Ray patted down Abdoo's pockets and felt nothing he believed could be a weapon. *Id.* at 58, 62. After the pat down, Ray told Abdoo he was going to search inside his pockets. *Id.* at 65. Ray asked if there was anything in Abdoo's pockets that could stick or poke him. *Id.* at 66. Abdoo said he has something that can poke Ray in his right pocket. (Abdoo Dep., Doc. 31, at 48). Abdoo claims the "something" was his penis, while Ray says he thought Abdoo was referring to a needle. *Id.*; Ray Dep., Doc. 34, at 66.

Abdoo was handcuffed tightly. (Abdoo Dep., Doc. 31, at 48). As Ray began searching him shortly after he was handcuffed, Abdoo made a "slight motion backwards with his left arm."

---

2. Collectively, the Court refers to these parties as the individual Defendants or the officer Defendants.

(Wesney Dep., Doc. 33, at 59). Wesney, who was also on the deck, likewise saw Abdoo stumble backward. *Id.* at 58-59. Wesney did not see Abdoo push into an officer with his body. *Id.* at 93-94.

Shortly after this, some combination of officers took Abdoo down to the deck surface. (Ray Dep., Doc. 34, at 27-28). Ray described the takedown as a balance displacement technique, bending Abdoo forward at the waist. *Id.* at 30. Abdoo said he felt his legs come out from underneath him and his head hit the deck. (Abdoo Dep., Doc. 31, at 48). Earhart says he, Ray, and Roach took Abdoo down. (Earhart Dep., Doc. 32, at 49-50). Roach testified he did not take Abdoo down, but Earhart and Ray did. (Roach Dep., Doc. 35, at 25). Ray testified he and Earhart, and all three officers, participated in the takedown. (Ray Dep., Doc. 34, at 28, 30). Wesney says Ray and Roach took Abdoo down. (Wesney Dep., Doc. 33, at 60). Abdoo says only Roach and Ray participated in the takedown, while expressing some uncertainty about the identity of the officers involved. (Abdoo Dep., Doc. 31, at 49-50).

Abdoo was not flailing, bucking around, fighting, attempting to break free or flee, or physically overpowering the officers. (Wesney Dep., Doc. 33, at 107-08). His feet were stationary when the officers took him down. *Id.* at 105. The officers "slammed" him into the deck. *Id.* at 105-06. Abdoo went down hard; his body made a loud thud when it hit the porch. (Ray Dep., Doc. 34, at 40-41).

While Abdoo was on the ground, Ray "took a knee" on Abdoo; he was standing straight up, then forcefully placed his left knee on the back of Abdoo's leg. (Wesney Dep., Doc. 33, at 106-07.) Abdoo saw Ray's knee go down on the back of his leg, and immediately felt pain. (Abdoo Dep., Doc. 31, at 62-63). Abdoo's leg was broken in multiple places. *Id.* at 66.

3

After this incident, the City of Clyde and the Sandusky County Sheriff conducted a joint investigation. (Snell Dep., Doc. 40, at 13-14; Kostopoulos Dep., Doc. 42, at 16).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*.

## DISCUSSION

Defendants collectively move for summary judgment on all claims brought by Abdoo. The officer Defendants argue they did not use excessive force and, even if they did, qualified immunity shields them from liability. (Doc. 36-1, at 11-24; Doc. 37-1, at 3-12). They also move for summary judgment on Abdoo's common law tort claims. (Doc. 36-1, at 28-30; Doc. 37-1, at 15-19). The municipal Defendants argue Abdoo has not pled sufficient facts or a cognizable legal theory to survive summary judgment on the claims against them. (Doc. 36-1, at 25-28; Doc. 37-1, at 13-15). Abdoo opposes summary judgment only on the § 1983 claims against the individual officers and his failure to investigate theory of municipal liability. *See* Doc. 44. For the following reasons, the

4

Court denies summary judgment for the officer Defendants on Count One of Abdoo's Complaint, and grants summary judgment for the municipal Defendants on Count Two and for the individual Defendants on Counts Three and Four of Abdoo's Complaint.

Takedown

Each officer Defendant has moved for summary judgment arguing they did not violate Abdoo's Fourth Amendment right to be free from an unreasonable seizure, and even if that right were violated, qualified immunity shields them from liability. (Doc. 36-1, at 11-24; Doc. 37-1, at 3-12). For the following reasons, the Court holds issues of fact preclude summary judgment at this juncture for taking Abdoo down.

The Fourth Amendment protects individuals from unreasonable seizure. U.S. Const. amend. IV ("The right of the people to be secure in their persons…against unreasonable . . . seizures, shall not be violated . . ."). Excessive force claims stemming from an arrest are judged against this Fourth Amendment "reasonableness" standard. *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). But what is reasonable is "not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). At the summary judgment stage, reasonableness is a question of law, not fact. *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2009)).[3]

---

3. Consequently, the Court grants the Clyde Defendants' motion to strike Glen Haas's testimony for purposes of summary judgment. (Doc. 48). For purposes of the instant motions, reasonableness is a question of law, not fact. *Zuress v. City of Newark,* 815 F. App'x 1, 8 (6th Cir. 2020) ("The

The individual officers all raise qualified immunity as a defense. (Doc. 36-1, at 11; Doc. 37-1, at 7). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). There are two prongs to the analysis: (1) do the facts, viewed in the light most favorable to plaintiff make out a violation of a constitutional right; and (2) was that right clearly established at the time of the alleged misconduct. *Id.* at 232. A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). It is Abdoo's burden to show the officers are not entitled to qualified immunity. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011); *Chappell*, 585 F.3d at 907.

The Court, ultimately, must answer three questions: which officers participated in the takedown, was the takedown an excessive use of force under the Fourth Amendment and, if so, did that excessive force violate a clearly established right?

*Which Officers Participated in the Takedown?*

The Court finds a genuine dispute of material fact concerning which officers participated in taking Abdoo down. Each officer testified Earhart was one of the officers who took Abdoo down. (Ray Dep., Doc. 34, at 30); (Earhart Dep., Doc. 32, at 49-50); (Roach Dep., Doc. 35, at 25). Wesney says Ray and Roach took Abdoo down. (Wesney Dep., Doc. 33, at 60). Abdoo says only Roach and Ray participated in the takedown, while expressing some uncertainty about the identity of the officers involved:

Q. You have a lot that you don't remember from that night –

_____

testimony of plaintiff's experts on a legal question cannot establish a genuine dispute of a material fact."). Thus, Haas's testimony, at this stage, lacks any relevance. Fed. R. Evid. 401.

6

A. Okay.

Q. -- correct? You'd agree with me that you have a lot of gaps in your memory from that night, correct?

MR. DICELLO: Object to form. Go ahead.

A. There are things that I do not remember and there are a lot of things that I distinctly remember.

Q. So you said you felt your legs go out from under you, correct?

A. I do.

Q. Do you recall who was holding you where?

A. I recall who was holding me, yes, I do.

Q. Okay.

A. Deputy Ray, I guess, would be the only one that I could identify at that time because, I guess, I knew who he was. The other officer behind me was -- I believe his name was Mr. Roach, I believe.

Q. So you said he was where?

A. They were behind me, on the side of me, behind me. There was one here and one here. (Indicating.)

Q. Okay. Where were they holding you? What part of your body?

A. They just had their hands on my shoulders. They both had their hands on my shoulder.

Q. Okay.

A. I don't know if it was on the side or the top, but they both were touching me.

Q. Where was Officer Earhart?

A. I believe he was closer to the door, I believe. But I'm not sure.

Q. So your understanding is he was talking to Amber?

A. I know at one point he was talking to Amber. He was.

Q. But he wasn't touching you at that time during the arrest?

A. Not that I recall.

Q. Okay. So you'd agree with me you were intoxicated?

A. I was intoxicated.

Q. Severely intoxicated, actually?

MR. DICELLO: Object to form.

A. I was definitely intoxicated.

(Abdoo Dep., Doc. 31, at 49-50).

Accepting Abdoo's identification of the officers who participated in the takedown at face value would mean finding Earhart did not participate in taking Abdoo down, despite Ray, Roach, and Earhart himself all testifying that Earhart participated in the takedown. (Ray Dep., Doc. 34, at 28); (Earhart Dep., Doc. 32, at 49-50); (Roach Dep., Doc. 35, at 25).

The Clyde Defendants argue this Court must accept Abdoo's testimony, even though it is not the most favorable version of the facts for him. *Id.* at 11 n.6. For this proposition, they cite

persuasive, but not binding, authority. *Id.* (citing, *inter alia*, *Aull v. Osborne*, 2009 WL 722605 at *2 (W.D. Ky.) ("Plaintiff cannot utilize Mr. Benson's testimony to bolster his case by contradicting his own version of the facts."); *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("When the nonmovant has testified to events, we do not (as urged by Plaintiffs' counsel) pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant.")).

"Construing the facts on summary judgment in the light most favorable to the non-moving party usually means adopting the plaintiff's version of the facts." *Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011). But usually is not always, and the unique facts of this case support deviating from the norm. First, the Clyde Defendants point to no binding authority to support this proposition, nor has this Court's own independent research uncovered any such authority.

Second, Abdoo's testimony lacks the certainty necessary for this Court to accept his testimony over other, more favorable testimony. Abdoo admits he did not know Roach at the time the arrest took place, the officers were behind him, and he was unsure where Earhart was when officers took him down (Abdoo Dep., Doc. 31, at 49-50). *See Jones v. Binion*, 2011 WL 1458429, at *5-7 (E.D. Ky.). *Jones* addresses a very similar set of facts – a plaintiff's own testimony was less favorable than other evidence in the record, and defendants sought to bind the Court to the plaintiff's version of the facts. *Id.* But that Court, addressing both *Aull* and *Evans*, found those cases inapplicable when a plaintiff's testimony lacks certainty. *Id.* at 7.

Here, Abdoo testified he *believed* Roach was the other officer, *believed* Earhart was closer to the door, but added that he was *not sure* about Earhart's location, and did not recall Earhart

touching him. (Abdoo Dep., Doc. 31, at 49-50). The officers were behind Abdoo when they began the takedown. *Id*. at 52-53. Abdoo testified he knew Ray before the incident, but his identification of Roach relied on applying later-obtained information to his memories of that night. *Id*. at 49 ("Deputy Ray, I guess, would be the only one that I could identify at that time because, I guess, I knew who he was. The other officer behind me was – I believe his name was Mr. Roach, I believe."). And clouding some of Abdoo's recollections is the undisputed fact that he was drunk. *Id*. at 49-50. Thus, similar to the *Jones* case, this Court does not find Abdoo's testimony possesses the requisite certainty to disregard conflicting, more favorable testimony.

Third, crediting Abdoo's testimony alone would lead to the bizarre result of finding Earhart did not participate in the takedown, when it is Earhart's sworn testimony that he did. (Earhart Dep., Doc. 32, at 49-50). This case presents the unusual circumstance where Abdoo's testimony favors Earhart, and vice versa. Thus, where this identifying fact is genuinely disputed, and is material to Earhart and Roach's liability, the Court cannot grant summary judgment for either Roach or Earhart.

This outcome is distinguishable from *Pineda v. Hamilton County*, 977 F.3d 483 (6th Cir. 2020). In that case, the plaintiff could point to no evidence to identify which one of three defendants allegedly used excessive force, so the Court affirmed the lower court's grant of summary judgment. *Id*. at 492. Here, there is evidence to believe Ray and Roach (Abdoo Dep., Doc. 31, at 49-50); (Wesney Dep., Doc. 33, at 60), Ray and Earhart (Roach Dep., Doc. 35, at 25); Ray Dep., Doc. 34, at 30), or Ray, Roach, and Earhart (Ray Dep., Doc. 34, at 28), (Earhart Dep., Doc. 32, at 49-50), took Abdoo down, unlike *Pineda* where summary judgment was granted for the complete absence of identifying evidence, 977 F.3d at 492. Thus, at this stage, a disputed material fact prevents the Court from granting summary judgment to any officer on the theory that

they did not participate in the takedown. The remaining analysis thus assumes each officer equally participated in the takedown.[4]

*Was the Force Used by Officers Excessive?*

As explained below, the Court finds there is a genuine issue of material fact as to whether Abdoo's constitutional rights were violated by the takedown. The primary concern supporting the officers' use of force is whether Abdoo posed "an immediate threat to the safety of the officers or others". *Graham*, 490 U.S. at 396. Defendants argue Abdoo's combination of resistance and drunken clumsiness on a second-story deck posed immense danger to the officers and himself. (Doc. 36-1, at 13, Doc. 37-1, at 5). But that argument relies on taking disputed facts in a light favorable to the officers, not the one most favorable to Abdoo.

Police have the right to use some force to arrest a suspect. *Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Generally, officers can use force when a suspect actively resists, and cannot use force when there is no active resistance. *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015). Active resistance includes physically struggling with officers, threatening them, and disobeying commands. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012). But active resistance is not an invitation for officers to use whatever force they wish—the Fourth Amendment governs how a seizure is made. *Graham*, 490 U.S. at 395; *Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008). Abdoo's subjective intent not to resist or to make jokes is irrelevant—the Court "must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day".

---

4. In their briefing, the parties discuss both supervisory and bystander theories of liability under § 1983. *See* Doc. 37-1 at 11-12, Doc. 44, at 27. Because a dispute of material fact prevents this Court from granting summary judgment to any of the officers, it declines to discuss these theories.

*Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992). Instead, it is tasked with evaluating his actions from the perspective of an officer on the scene. *Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006). The established facts, taken in a light most favorable to Abdoo, must also be viewed as a reasonable officer would see them at the time.

Taking the facts in the light most favorable to Abdoo, he was handcuffed when the officers took him down. (Abdoo Dep., Doc. 31, at 51). He made a "slight motion backwards with [his] left arm" when officers began to search him. (Wesney Dep., Doc., 33, at 58-59). The officers and Abdoo were "stumbling", but it was not a "chaotic" moment. *Id.* at 61. Abdoo was not flailing, bucking around, fighting, attempting to break free or flee, or physically overpower the officers. (Wesney Dep., Doc. 33, at 107-08). Wesney – who was watching – did not see Abdoo push into an officer with his body. *Id.* at 93-94. Abdoo testified that he never struggled with the officers. (Abdoo Dep., Doc. 31, at 48). Abdoo admits he told Ray, when asked, that he had something in his pocket that could poke Ray. *Id.* He does not recall being unsteady on his feet, but does not affirmatively testify he was steady. *Id.* at 50-51. Abdoo's feet were planted and still when the officers took him down. (Wesney Dep., Doc. 33, at 105). Wesney denied that Abdoo was disobeying and defying the officers' efforts to search him. *Id.* at 58-59.

The parties dispute how Abdoo responded to Ray's attempt to search his pockets. Abdoo claims he did not struggle with Ray. (Abdoo Dep., Doc. 31, at 48). Wesney saw Abdoo make a "slight motion backwards with his left arm", (Wesney Dep., Doc. 33, at 59), but he was not fighting, attempting to break free or flee, or physically overpowering the officers, *Id.* at 107-08. But Ray testified Abdoo turned his body aggressively, with a quick and deliberate motion into Ray's chest with enough force to knock him off his stance. (Ray Dep., Doc. 34, at 160-61). That testimony is contradicted by Wesney, who said Abdoo never shoved anyone with any part of his

11

body and made only a slight motion with his arm while handcuffed. (Wesney Dep., Doc. 33, at 59-61, 93-94). For the purposes of this motion, the Court must accept the version most favorable to Abdoo—a slight movement with his arm away from officers, while handcuffed.

The Clyde Defendants admit two of the *Graham* factors—the severity of the crime and whether a suspect is attempting to flee—weigh in Abdoo's favor. (Doc. 37-1, at 5); *see also Graham*, 490 U.S. at 396 (including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" as factors to determine whether force is reasonable). And the Sandusky County Defendants focus their arguments on the officer safety factor – the degree of risk Abdoo posed to the safety of those at the scene. (Doc. 36-1, at 11-17). So, the key questions become whether this arm movement qualifies as resistance, whether Abdoo threatened Ray, whether Abdoo's stumbling posed a risk to officers' safety or constituted resistance, and what level of force was reasonable to both obtain Abdoo's compliance and protect officer safety.

First, regarding the arm movement, courts have routinely found minimal, non-threatening movement by a suspect does not permit officers to use a great deal of force against them. *Lawler*, 268 F. App'x at 387 ("While the videotape shows that Lawler continually raised his hand, he never raised it in a menacing way . . . A triable issue of fact thus exists over the reasonableness of Toro's initial decision to throw Lawler to the floor."); *Jennings v. Fuller*, 659 F. App'x 867, 869-70 (6th Cir. 2016) (briefly lowering a hand while being searched did not give officer right to forcefully take plaintiff down). Similarly, the alleged slight motion here creates an issue of fact as to the reasonableness of the takedown, because Abdoo was already handcuffed when Ray began trying to search his pockets. (Abdoo Dep., Doc. 31, at 48).

Second, Abdoo's ill-advised attempt at humor does not doom his claim. As the search began, Ray asked Abdoo if he had anything that could poke him. (Ray Dep., Doc. 34, at 61). Abdoo responded that there might be and laughed. (Abdoo Dep., Doc. 31, at 48). Although Abdoo testified he was referring to his penis, *id.*, that subjective intent does not affect the reasonableness of Ray's interpretation, *see Graham*, 490 U.S. at 396. However, as a historical fact, Abdoo had no weapon in his pocket. (Ray Dep., Doc. 34, at 57). Ray's question came after he had already patted Abdoo down and found nothing that felt like a weapon. *Id.* Abdoo's hands were restrained behind his back with handcuffs; he testified Ray did so quite tightly. (Abdoo Dep., Doc. 31, at 48, 61). Thus, Abdoo's statement, joke or otherwise, does not render the use of force reasonable, because Ray already suspected Abdoo was not armed, and Abdoo was restrained from grabbing anything from his pockets in any event.

Crediting Ray's testimony that Abdoo's comment signaled to him some risk of danger, pursuant to the Court's obligation to view the circumstances as a reasonable officer would see them, it does not follow that a takedown is inherently a reasonable response. The Sixth Circuit, when confronted with a suspect who used foul language and balled his fists without raising them, found officers behaved unreasonably when they used a leg sweep to knock the suspect to the ground, face first. *Pershell v. Cook*, 430 F. App'x 410, 415 (6th Cir. 2011). That case leads to a similar conclusion here—a minimal threat does not support a strong use of force from officers. In *Pershell*, the suspect was unrestrained and, by balling his fists, was beginning to indicate both a willingness and a capacity to use violence against the officer. *Id.* In this case, Abdoo's arms were restrained, Ray had already frisked Abdoo for weapons, and Abdoo laughed while making his tasteless joke. Even viewing this from the perspective of a reasonable officer on the scene, these facts do not indicate an actual threat to officer safety sufficient to warrant a physical takedown.

13

Third, Abdoo's drunken stumbling did not present enough of a danger to officers to justify the degree of force used. Abdoo was "stumbling", but it was not a "chaotic" moment. (Wesney Dep., Doc. 33, at 61). Abdoo was not flailing or bucking around. *Id.* at 107-08. Officers needed to use some force, grabbing him by the arms, to stabilize him. *Id.* at 105. But this does not necessarily support taking Abdoo down, particularly in the manner used. The Sixth Circuit has recognized takedown methods that leave suspects with no means to protect their face are not appropriate merely because some degree of force is reasonable. *Meirthew v. Amore*, 417 F. App'x 494, 498 (6th Cir. 2011).

Key to this analysis is that Abdoo's feet were stationary when the officers took him down. (Wesney Dep., Doc. 33, at 105). Abdoo's threat to officer safety, for the purposes of deciding this motion, came from uncoordinated, drunken stumbling, not a concerted attack or active resistance against the officers. Wesney's testimony would permit a reasonable jury to find Abdoo was restrained by handcuffs and subdued by officers' hands before officers took him to the ground.

Abdoo was drunk that night, which no doubt added volatility to the incident. *See Marvin v. City of Taylor*, 509 F.3d 234, 246 (6th Cir. 2007). But again, this alone does not grant officers *carte blanche* authority to use any amount of force against him. *Id.* ("His intoxicated condition might render a decision to handcuff him behind his back objectively reasonable, but that does not necessarily answer the question of whether it was objectively reasonable to use such force as would result in a fractured shoulder . . ."); *Solovy v. Morabito*, 375 F. App'x 521, 526, n.4 (6th Cir. 2010) ("The mere fact of intoxication does not justify gratuitous violence."). As discussed above, there is testimony in the record that officers controlled Abdoo, getting him to a stable, stationary position before taking him down, while handcuffed. (Wesney Dep., Doc. 33, at 105). The question is

14

whether that particular action was reasonable, not whether some abstract use of force was permissible.

Ray presents seven Sixth Circuit opinions in an attempt to show Abdoo's actions amounted to active resistance that justifies his takedown. (Doc. 36-1, at 15-16). All are distinguishable. First, as Abdoo notes, each case features an unhandcuffed suspect. (Doc. 44, at 22-23). This is relevant for two reasons: 1) it means the suspects all presumably posed more of a threat to officer safety than Abdoo did (viewing the facts in the light most favorable to him), and 2) it means each takedown was less forceful than that presented here, because the suspects would have had some ability to protect themselves as they fell.

*Griffin v. Hardrick* analyzes a pre-trial detainee's excessive force claim under the Eighth Amendment's "unnecessary and wanton infliction of pain" standard. 604 F.3d 949, 953 (6th Cir. 2010). Thus, the question in that case was whether the takedown was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 954. That is not the reasonableness standard, and does not inform this Court's analysis of this Fourth Amendment case.

*Burchett v. Kiefer* involved a claim that officers used excessive force in handcuffing Burchett. 310 F.3d 937, 944 (6th Cir. 2002). The court found that force reasonable, but did not analyze what that force was. *Id.* Not knowing the amount of force or the method used to handcuff the plaintiff limits its applicability to this case, in which a handcuffed suspect was taken down without any means to protect his face, a substantial use of force that limits this case's similarity to other use of force cases.

*Phillips v. Blair* again features an uncuffed suspect, who was wanted for burglary, and actively resisted for far longer than Abdoo did. 786 F. App'x 519, 530 (6th Cir. 2019). The officers

reasonably believed plaintiff had access to weapons and could lash out and attack them in *Phillips*, the court reasoned. *Id*. But this case did not include a suspect threatening to lash out, nor did an officer reasonably believe Abdoo had access to a weapon. And any threat his stumbling posed had been eliminated before the takedown, according to the record when viewed in the light most favorable to Abdoo.

The Sixth Circuit found an officer did not use excessive force when he used a takedown to get an actively resisting suspect to the ground to handcuff him. *Bozung v. Rawson*, 439 F. App'x 513, 520 (6th Cir. 2011). But the plaintiff in *Bozung* had not been searched, so the officer did not know if he was armed, and he resisted, for two to three minutes, the officer's instruction to place his hands behind his back to be handcuffed. *Id.* Here, the incident unfolded quickly, but after Abdoo was handcuffed, visually searched and patted down, and without the sort of active resistance present in *Bozung*.

The plaintiff in *Rudlaff v. Gillispie*, again, was not handcuffed when officers used force against him. 791 F.3d 638, 642 (6th Cir. 2015). He also locked up his body, told officers he would resist them, and swung his arms twice toward officers. *Id.* This is a much greater degree of active resistance than Abdoo ever displayed.

*Lyons v. City of Xenia* shows the importance of viewing facts in the light of a reasonable officer on the scene—the Sixth Circuit held the officer's tackle was reasonable because the defendant officer "responded to a distressed call for backup help from a fellow officer", that officer believed he was assisting another officer in a dangerous environment, and when the defendant officer arrived, he saw another officer confronting the plaintiff, yelling at each other. 417 F.3d 565, 576-77 (6th Cir. 2005). Thus, *Lyons* does not inform this Court's analysis.

Finally, in *Thacker v. Lawrence County*, the officers were trying to subdue an uncuffed suspect. 182 F. App'x 464, 471-72 (6th Cir. 2006). The question in that case was what degree of force could be used to restrain the suspect; but in this case, the suspect was already restrained and there is testimony his movement was stopped by officers before the takedown.

Thus, this Court finds – taking the facts in the light most favorable to Abdoo as it must at this juncture – Abdoo was not actively resisting officers when they took him down. Abdoo was handcuffed, had not threatened officers, and his stumbling had been stabilized before the takedown. "[I]t is unreasonable and thus a violation of the Fourth Amendment for a police officer, acting under color of law, to use physical force on a citizen who has been arrested and restrained, who is securely under the control of the police, and who is not attempting to escape." *Cox v. Treadway*, 75 F.3d 230, 234 (6th Cir. 1996). Abdoo can present a version of the facts that matches the holding in *Cox.* Therefore, Abdoo has established a genuine dispute of material fact such that a jury must determine whether the force used against him was unreasonable.

   *Did the Excessive Force Violate a Clearly Established Right?*

Qualified immunity protects government officials from liability unless the right they violated was clearly established. *Pearson*, 555 U.S. at 231. A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But the right must not be defined so narrowly as to make § 1983 an empty remedy. *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (cautioning against defining rights too narrowly, such as "the right to be free of needless assaults by left-handed police officers during Tuesday siestas"). Even a right

17

violated in a novel factual circumstance, can still be clearly established—the Court should determine "whether the state of the law [at the time of the incident] gave [the officers] fair warning that their alleged treatment of [plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) Following the *Hagans* formulation, and viewing the evidence in the light most favorable to the non-moving party, the right in this case is whether Abdoo, as a misdemeanant, after officers stopped and controlled his minimal level of resistance, had a clearly established right to not be taken down while handcuffed. This Court finds that right was clearly established.

The Sixth Circuit has "repeatedly stated that 'the right to be free from excessive force is a clearly established Fourth Amendment right.'" *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001)). Specifically, a suspect's right to be free from force once incapacitated or neutralized is clearly established. *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) ("We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.").

The *Meirthew* case provides a similar set of relevant facts and reasoning from which an officer could know this right was clearly established. Officers arrested Meirthew for furnishing alcohol to minors, along with felony assault for kicking an officer in the groin. *Meirthew*, 417 F. App'x at 495. Officers transported Meirthew to jail; in the booking room, Meirthew was drunk and belligerent. *Id*. While handcuffed, Meirthew engaged in at least passive resistance, refusing to keep her feet spread so officers could search her. *Id*. at 496. After one officer warned her to comply or he would take her down, he indeed took her down. *Id*. The district court denied summary judgment. *Id.* The Sixth Circuit found the plaintiff had adequately presented an issue of material fact as to the reasonableness of the officer's takedown, writing "[w]hile she was non-compliant in refusing to spread her feet, a reasonable jury could find that Meirthew posed no danger and the use

18

of the arm-bar takedown was unreasonable under the circumstances." *Id*. at 497. Then, most importantly for this case, the Sixth Circuit found the right was clearly established, not because some precisely on-point case existed, but because its "prior opinions clearly establish that it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented." *Id*. at 499.

In both the *Meirthew* case and this one, the suspect was drunk and belligerent, adding volatility and uncertainty to the interactions. In both cases, the suspects were not perfectly compliant, and offered up some form of resistance to the officers. In both cases, the suspects were handcuffed, so the suspects had no way to shield their faces as they hit the ground. The similarity between the cases, and the Sixth Circuit's reliance on past reasoning over specific facts to find the right clearly established, persuades this Court to do the same. Thus, Abdoo's right to not be taken down while handcuffed, if he was not resisting, was clearly established, and the officer Defendants cannot rely on qualified immunity at the summary judgment stage to shield themselves from liability.

The officer Defendants' emphasis on the unique environment is unpersuasive because its significance is negated by the facts the Court must accept for the purpose of this motion. All the officer Defendants rely on similar reasoning: Abdoo's uncoordinated stumbling created a chaotic scene that placed the officers at severe risk, so they had to take him down quickly to protect themselves. (Doc. 36-1, at 13, Doc. 37-1, at 5). This is because the scene unfolded on a thirteen-by-thirteen feet deck approximately twenty feet from the ground. (Wesney Dep., Doc. 33, at 37, 40-41). But the Court cannot accept that version of the story at this stage of the litigation. *Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426, 429 (6th Cir. 2009) ("We must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party."). Instead, the Court must

accept the version supported by Abdoo and Wesney's testimony: Abdoo was drunk, he stumbled, but the officers used force to control that stumbling before taking him down, while Abdoo was handcuffed and unable to protect himself as he went down.

Roach and Earhart point to a district court case and an out-of-circuit appellate decision to show officers are shielded by qualified immunity in cases like this one, but neither are persuasive. A district court in Wisconsin found officers did not violate the Fourth Amendment for taking a drunk suspect down when he was near a busy road and at risk of falling into the street. *Cibulka v. City of Madison*, 448 F. Supp. 3d 1002, 1022 (W.D. Wisc. 2020) ("The undisputed evidence shows that the individual defendants used the type and amount of force that they thought was reasonably necessary under the circumstances."). But, as that court acknowledged, "[t]he use of excessive force is an area of the law 'in which the result depends very much on the facts of each case'". *Id*. (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). In *Cibulka*, the suspect was not handcuffed. 448 F. Supp. 3d at 1011. Additionally, the officers tried to stabilize the plaintiff's drunken stumble, and he resisted that force, pulling away, verbally refusing to comply, and raising his arms up and out. *Id*. at 1010. Here, the facts the Court must accept for summary judgment show Abdoo stumbled, while handcuffed, and was stabilized by officers before they took him down. And, as the Sixth Circuit has noted, taking down a handcuffed suspect is a more substantial use of force than the same action against an unhandcuffed suspect. *Meirthew*, 417 F. App'x at 498.

Additionally, Roach and Earhart argue this Court should follow the Tenth Circuit, which held an officer did not violate a plaintiff's Fourth Amendment rights when he threw a drunk, uncooperative woman to the ground when she closed the door in his face. *Starrett v. City of Lander*, 699 F. App'x 805, 806-07 (10th Cir. 2017). But that court affirmed the district court's handling of "unique circumstances". *Id.* at 812. And while both Abdoo and the plaintiff in *Starrett*, were drunk,

20

Starrett was also not handcuffed, and she was involved in a domestic dispute, which the court acknowledged poses an additional risk to officer safety. *Id.* at 811-12. And the Tenth Circuit held there was no clearly established right in the case, due to a lack of specificity in other cases. *Id.* at 812. But *Meirthew*, among other Sixth Circuit and Supreme Court precedent, shows how a right can be clearly established without a precise, in-circuit factual analogue. *See*, *e.g.*, *Hagans*, 695 F.3d at 509. The Court is not persuaded by the reasoning of this out-of-circuit decision.

Thus, the Court finds that the officers who participated in taking Abdoo down are not entitled to qualified immunity, because there is a genuine dispute of material fact concerning whether the officers violated Abdoo's clearly established Fourth Amendment right to be free from excessive force.

Knee Drop

Under the facts this Court must accept as true for the purposes of deciding this motion, Plaintiff has also made out an additional constitutional violation against Defendant Ray. Testimony from Wesney indicates Ray went from standing straight up to dropping one knee onto the back of Abdoo's legs. (Wesney Dep., Doc. 33, at 106-07). Abdoo was, at that moment, handcuffed tightly, flat on his stomach. (Abdoo Dep., Doc. 31, at 48). Defendants do not point out any record evidence to support Abdoo resisting arrest while on the ground. Wesney testified that Abdoo was not trying to get back up. (Wesney Dep., Doc. 33, at 106).

The Sixth Circuit has routinely condemned the use of force against a subdued suspect. *Bultema v. Benzie Cty.*, 146 F. App'x 28, 35 (6th Cir. 2005) ("It is well established in this circuit that the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional."); *Screiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("[S]triking a neutralized suspect who is secured in handcuffs is objectively unreasonable."). Thus, based on the facts

presented by Abdoo, Ray's qualified immunity defense fails as well: his knee drop violated Abdoo's right to be free from excessive force, and that right was clearly established.

Ray points to two Sixth Circuit cases to support the proposition that "it is not unreasonable or excessive force for an officer to 'knee' a subject on the ground when that action is incidental to an otherwise appropriate takedown." (Doc. 36-1, at 19). But those cases are factually distinguishable, as both cases deal with officers taking down a suspect who was not handcuffed. *Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006); *Bozung*, 439 F. App'x at 520-21. And, as discussed above, factual disputes prevent the Court, at this juncture, from holding Ray's takedown was appropriate.

Ray also looks to discount Plaintiff's version of the facts, attempting to distinguish "the actions that took place" from the "self-serving words used two years later by Plaintiff's girlfriend". (Doc. 36-1, at 18). The Court expects the testimony cited by Plaintiff to serve him, and at this stage the admissible testimony of an eyewitness is what matters, not what Ray contends happened. *Nickels*, 560 F.3d at 429. Similarly unmoving are Ray's arguments that he bore no sadistic intent toward Abdoo. (Doc. 36-1, at 19). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397.

Wesney's testimony establishes a version of the facts in which Ray did not fall during an appropriate takedown and make incidental contact, but instead took a separate, forceful action against an unresisting, subdued suspect. Therefore, Ray is not entitled to summary judgment for Abdoo's claim that Ray violated his Fourth Amendment rights when he dropped his knee on the back of Abdoo's leg.

<u>Municipal Liability</u>

Abdoo also alleges the City of Clyde and the Sandusky County Sheriff are liable for their employees' constitutional violations. In his Complaint, Abdoo alleges two distinct theories of liability: the employers failed to train the officers, and the employers failed to investigate their alleged wrongdoing. (Doc. 1, at 8, ¶¶ 36-37). For the following reasons, neither theory supports a claim for recovery.

A municipality is not liable solely for employing a tortfeasor, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred *because of* a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added); *see also Doe v. Claiborne Cty. ex. rel. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) ("[P]laintiff must also show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy.") (internal quotation omitted).

*Failure to Train*

Both municipal Defendants moved for summary judgment on Abdoo's failure to train claim. (Doc. 36-1, at 25-28; Doc. 37-1, at 13-15). But Abdoo did not respond to these arguments. *See* Doc. 44, at 11-13, 32-35. When a plaintiff fails to address a motion for summary judgment on a particular claim, this Court can decline to reach the merits of that claim. *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) ("The district court properly declined to consider the merits of this claim because [Plaintiff] failed to address it in either his response to the summary judgment motion or his response to [Defendant's] reply brief."). To satisfy his burden

23

at this stage, Abdoo needed to present evidence that the municipal Defendants' failure to train amounted to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Typically, to support a finding of deliberate indifference requires plaintiff to show a pattern of similar constitutional violations. *Id.* at 62. Abdoo has presented no evidence of either.

Abdoo's failure entitles the municipal Defendants to summary judgment on his failure to train claim, since he "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020).

*Failure to Investigate*

Abdoo also alleges the municipal Defendants' investigation into the use of force was so inadequate that it ratified the unconstitutional acts of the officers, thus permitting recovery against the municipalities. (Doc. 44, at 32-35). The Court holds Abdoo has not presented sufficient evidence to overcome summary judgment on his failure to investigate claim.

Municipal liability requires an unconstitutional policy or custom. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Thus, a failure to investigate claim requires not only an inadequate investigation in the present case, but also a clear and persistent pattern of violations in prior cases. *Pineda v. Hamilton Cty.*, 977 F.3d 483, 494-96 (6th Cir. 2020) ("[A]n entity's failure to investigate the plaintiff's specific claim will, by definition, come after the employee's action that caused the injury about which the plaintiff complains. Because the injury will have already occurred by the time of the specific investigation, there can be no causation from that single failure to investigate."); *see also David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017) ("Absent evidence of a pattern of violations, there is no demonstration of causation to

show that the allegedly inadequate investigation caused the constitutional violation in question here."). *Pineda* collects and synthesizes the Sixth Circuit's caselaw on the failure to investigate theory of liability. 977 F.3d. at 494-96. It makes clear, despite apparently contradictory language in other cases, that multiple inadequate investigations must be a part of a failure to investigate claim. *Id.* at 495.

Assuming, *arguendo*, Abdoo alleged the municipal Defendants conducted a constitutionally defective investigation, his claim still fails because he has not alleged a municipal policy or custom of bad investigations into police misconduct. While Abdoo does indeed allege some troubling facts related to the municipal Defendants' investigation into this incident. (Doc. 44, at 11-13), "[a] single failure to investigate a single plaintiff's claim does not suffice." *Pineda,* 977 F.3d at 495. Thus, his claim fails as a matter of law.

Abdoo's legal citations to the contrary are ultimately unavailing. As the *Pineda* court noted, the conduct in *Leach v. Shelby County Sheriff* included at least fourteen other instances of poor treatment that went ignored and unpunished. 891 F.2d 1241, 1247-48 (6th Cir. 1989). And the facts in *Marchese v. Lucas* include a sheriff's department intentionally unlocking a prisoner's cell door to permit officers to assault him, covered up the attack, and failed to investigate or discipline the officers involved. 758 F.2d 181, 187-88 (6th Cir. 1985). Additionally, in that case a court ordered an investigation into who had assaulted the plaintiff, which the sheriff failed to do. *Id.* at 184; *see also Meirs v. Ottawa Cty.*, 821 F. App'x 445, 453 (6th Cir. 2020) (interpreting *Marchese*). Abdoo does not allege anything of the sort in this case.

The most recent command from the Sixth Circuit is that a single bad investigation, conducted after the fact, cannot satisfy the causation element necessary to impose municipal liability. *Pineda*, 977 F.3d at 495 ("Because municipal liability requires an unconstitutional

"policy" or "custom," we have held that an allegation of a single failure to investigate a single plaintiff's claim does not suffice."). Because Abdoo has presented nothing more, his failure to investigate claim fails as a matter of law.[5]

<u>State Law Claims</u>

Finally, Defendants moved for summary judgment on Plaintiff's common law tort claims. (Doc. 36-1, at 28-30; Doc. 37-1, at 15-19). Abdoo did not oppose their motion. (Doc. 44, at 35). Therefore, Defendants are granted summary judgment as to Abdoo's assault, battery, and intentional infliction of emotional distress claims. *Hicks*, 449 F. App'x at 487.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that the Defendants City of Clyde and the Sandusky County Sheriff be, and the same hereby are, GRANTED summary judgment as to Count Two of Abdoo's Complaint; and it is

FURTHER ORDERED that Defendants Ray, Roach, and Earhart be, and the same hereby are, GRANTED summary judgment as to Counts Three and Four of Abdoo's Complaint; and it is

---

5. Because this Court determined Abdoo's municipal liability claims fail solely as a matter of law, Clyde Defendants' motion to strike Haas's testimony (Doc. 44) on this issue is DENIED as MOOT.

FURTHER ORDERED that Defendants Ray, Roach, and Earhart's Motions for Summary Judgment as to Count One of Abdoo's Complaint be, and the same hereby are, DENIED; and it is

FURTHER ORDERED that Defendants City of Clyde, Roach, and Earhart's Motion to Strike (Doc. 48) be, and the same hereby is, GRANTED in part and DENIED AS MOOT in part.


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE